Welcome, everyone, to day two of our sitting. Judge Brasher and I are pleased to have Judge Paul Huck sitting with us today by designation. He is a district court judge in the Southern District of Florida. Thank you, Judge Huck, for helping us with our business. Glad to be here. And just before we get started, a few rules of the road. Number one, please know that we have read your materials. We've read the briefs, the underlying cases, the statutes, the record materials. So you have limited time before us, so don't waste your own time with a bunch of factual and procedural ramp-up. We don't need it. Just get right to it. Number two, traffic light system, you'll understand, I think, intuitively. Green is go, yellow is slow, red, please aspire to stop. And then if I don't stop you, please read my body language that is suggesting that you stop. So with that, let's call the first case, 23-13888, United States v. Copeland. Got Mr. Little here for the appellant, Mr. Gantz here for the appellee, and Mr. Little, let me just note for the record in advance of your argument that we see that you've been appointed by the court. We appreciate your service to your client and to the court. You may proceed when ready. David Copeland Court, counsel. Your Honor, this morning on behalf of Mr. Copeland, what we're asking this court to do is consider the guilty verdicts as to counts 2, 3, 4, 5, and 6 in which Mr. Copeland proceeded to trial on and was convicted of. What we're asking the court to do is to set those guilty verdicts aside or in the alternative, remand this case back for a resentencing in front of the district court. Your Honor, our issue, I want to address, first of all, the government's indicated that the argument would be foreclosed by the Supreme Court case of Powell. While the words inconsistent were used in the brief, I think this is more an argument that our position is that the underlying evidence that was before the trial court is just inconsistent to sustain the convictions based on the lack of mens rea evidence as to Mr. Copeland's knowledge of the scheme to pay and receive kickbacks in this case. Counts 2 and 3 of the superseding indictment, which we proceeded to trial on, were allegations that Mr. Copeland received two payments from what the government described as a co-conspirator. I'll describe him as a cooperating defendant since Mr. Copeland was acquitted of the conspiracy. Then, counts 4, 5, and 6 were payments that Copeland then paid to another individual, Mr. Gordon, who also testified at the trial in this case. Those two individuals, Moss and Gordon, who testified on behalf of the United States, were the primarily, if not the complete evidence, of Mr. Copeland's alleged involvement in this conspiracy. They testified the things that Mr. Copeland allegedly did, the things Copeland allegedly said, and this really comes down to what information Mr. Copeland knew as far as the doctors that were being influenced to refer patients to Florida Pharmacy Solutions. Our position is Mr. Moss and Mr. Gordon, clearly their testimony, the evidence presented by the government through those two individuals, was clearly rejected by the jury at the underlying trial. They acquitted him of the conspiracy, and what's important is counts 2, 3, 4, 5, and 6 are direct overt acts that were alleged in the or did credit the testimony of Moss and Gordon, Mr. Copeland would have been convicted of the conspiracy, without a doubt, because they then convicted him of the substantive counts, so the evidence of the conspiracy would have been there already if they credited Moss and Gordon. Our position is the testimony of Moss and Gordon was not credible, the jury rejected that, and we're asking this court to do the same thing, reject that testimony, that evidence of Mr. Copeland's involvement, and find that without that evidence, there is insufficient evidence to prove that Mr. Copeland knowingly and willfully participated in the substantive counts, receiving the kickbacks, and then subsequently paying the kickbacks. Can I ask you a question? So maybe, maybe I'm just dense, but I know you said at the outset, this isn't like Powell, it's not just inconsistent verdict, but I think I'm still having kind of a tough time figuring out why what you just said isn't fundamentally a Powell argument about inconsistent verdict. I mean, it sounds like you said, well, because they acquitted him, you know, sort of mens rea was sort of front and center with respect to the conspiracy counts, and because they acquitted him of those, they had to have concluded that he didn't have the necessary mens rea for the substantive counts. Well, I think as far as a conspiracy, that would be the argument, but as a substantive count, I'm asking the court to look at the evidence from Moss and Gordon and disregard that evidence, that it's not credible evidence based on the facts of this case. But just to follow up briefly, it's not credible because, like, on the merits of the thing, it's not credible, or it's not credible because it's somehow inconsistent with the conclusion that they reached on the other counts? Our position would be that on the merits. Okay. That their testimony is not credible on the merits and should be rejected by this court. I mean, and so why would that be? I mean, how are we to make a credibility determination and say that they were not credible? Well, just a review of the record in this case, the things they testified to, the inconsistencies they testified to as Mr. Copeland's involvement. Or alleged involvement in the underlying conduct. Did the district, I mean, I'm sorry, did the jury have to credit their testimony to find him guilty of the substantive counts? I believe in order, yes. I believe in order to find that he willfully, knowingly and willfully accepted kickbacks and that knowingly and willfully paid those kickbacks out, there would have to be some evidence that they credited to say he understood what was on as far as improperly influencing the doctors. Because without that evidence, he's not doing anything other than accepting payments and making those payments. Yeah, but I mean, but couldn't, so, I guess, so I understand that they found him not guilty of the conspiracy counts, but part of the conspiracy counts required a showing of an agreement with the co-conspirators. And couldn't the jury have just said, look, he knew what was going on, he participated in these substantive counts, but we just don't think there's enough to show that he agreed to work with these other people in kind of a conspiratorial manner to do this. They certainly could have found that. Okay. That's kind of the issue, right? We don't know why they did what they did. But if they could have found that though, then how could we say that there's insufficient evidence to convict on the substantive counts? Just by an independent review of the record, I would argue that the evidence that was before the jury, even as to Moss and Gordon's testimony as to what Mr. Copeland was involved in was not credible. So that would be the argument as to our position to set aside the verdicts. I'm going to kind of combine issue two and three that we've raised because they go together that if we're successful on issue number two, then issue number three would go along with that and Mr. Copeland would be also entitled to a two-level reduction for a zero-point offender. So at sentencing in this case, the district court judge found that Mr. Copeland was a leader or a manager and then imposed an aggravating role adjustment of three levels upwards. Under the guidelines, obviously the court's well aware that there would have to be evidence of five or more participants or that Mr. Copeland directed one or more people to participate in the criminal offense. So when we look at the evidence that was before the court or at the court at the district court level, taking relevant conduct out and taking acquitted conduct out, there was no evidence that was set forth before the district court judge at the time of sentencing to indicate that Mr. Copeland directed five or more participants. Now, I will concede that there was other sales representatives that were working underneath Mr. Copeland. However, there was no testimony, no evidence presented at the time of sentencing or at the trial that all of those sales representatives under Mr. Copeland were involved in this criminal offense. How about Mr. Gordon and Mr. Jackson? Well, I would argue that would be the acquitted conduct that Mr. Gordon. So Mr. Gordon was charged with the conspiracy as a co-conspirator. The jury rejected that. So if we take out the acquitted conduct, there would be no further evidence that Mr. Gordon worked for. I'm having the same problem with the other judges. You keep going back to the acquitted conduct and somehow having suggestion the court cannot find those facts, even though the jury did find those facts to be the case because they convicted him on the other five counts. So I just don't know, have you abandoned the idea that just because there's an acquitted count one that that shows there's no mens re? Are you abandoning that argument, which was the, I think the crux of your first point? I'm not abandoning it entirely. And if I could address the court's concern with my issue of the acquitted conduct now. Yeah, but you seem to abandon it and then you keep bringing it up. So I'm not sure what your position is. Well, I'm not abandoning that argument. However, for purposes of the sentencing enhancement, there would have to be evidence of five or more participants or that Mr. Copeland directed one or more people. So, well, there was evidence that he directed Mr. Gordon specific with regard to lunches, hunting trips, things of that nature, that he was aware of them and directed them and approved them. How is that not directing and being a supervisor? If the court credits that testimony, our position is that testimony is not credible. But the jury found it credible, though. And it's not us or us to say it's credible or not credible. Well, I don't know if the jury found that particular testimony credible. They very well could have. I don't know, as I stand here, whether they did or not, though. Because on the substantive counts, they could have, they could have convicted him on those counts based on something other than what Mr. Gordon testified to. My position is the testimony at trial was insufficient to show that Mr. Copeland directed Mr. Gordon to do anything. In fact, the testimony was that Mr. Moss brought Gordon into this company without Copeland's  That Copeland, and this came out through the cooperating defendants, that Mr. Copeland didn't want Gordon in the company. Moss brought him. Compromise that and arrange so that Mr. Gordon would be under the supervision of the defendant and would pay the defendants some of the kickback that Mr. Gordon earned. He was in his sales territory. Isn't that classic supervising? I would say on the evidence below, no, that he was not directing him to do anything. That Mr. Gordon was being directed by Moss, Mr. Moss, and that Copeland simply served as the pass-through for the payments that FPS received that would then be paid to Mr. Gordon. Can I ask you a question just about the sentencing guidelines? Am I wrong in understanding that the guideline at issue at the time of the relevant events here actually didn't prohibit the consideration of the conduct? Correct. At the time of the offense or the conduct of the offense, that guideline had not been amended yet. Okay, and what bearing here? Well, I think it would be two-part. So if we take out the or if we consider the acquittal conduct, I would still fall back and say there's no evidence that it was five or more participants or that he directed one or more people. That would still be the argument as to whether or not he had an aggravating role or should have had an aggravating role. At the sentencing, the judge who sat through the trial, heard all that testimony and came to the conclusion that there was such evidence that he was a supervisor? Correct, she did. And then issue three, if issue two is decided in favor of Mr. Copeland that he should not have been classified a leader or a manager, then he would have been entitled to the two-level reduction as a zero-point offender under the guideline amendments that were in place at the time. He had no criminal history points. Therefore, without the aggravating role adjustment, he would have been entitled to the two-level reduction. Finally, the last issue is to acceptance. Mr. Copeland proceeded a trial, obviously held the, or put the government to its burden at trial, was acquitted on the overall conspiracy. However, he was convicted of the substantive counts. That in and of itself, I don't believe would preclude him from receiving a two-level downward adjustment for acceptance of responsibility. So it doesn't preclude him, but like, is there an acceptance of responsibility here? I would say there is, yes, because he did not deny the overall facts of the case. Our argument at trial was, are those facts sufficient to impose criminal liability? So we never denied the facts of the case. He didn't testify. He didn't deny any of the facts. We didn't deny the facts even through cross-examination of witnesses. It was simply, are those facts sufficient to sustain a conviction under the law? And as in substantive counts, the jury found it did, but under the conspiracy, they did not. All right, very well. Mr. Gantz, let's hear from you for the government. Good morning, and may it please the Court. Brendan Gantz for the United States. The evidence at trial was more than sufficient to support Mr. Copeland's convictions for receiving and paying kickbacks and aiding and abetting others in doing so. I'd like to address first the arguments we've heard this morning regarding Powell's prohibition on the consideration of inconsistent verdicts for sufficiency purposes. There was some suggestion that perhaps the Powell rule operates differently in this case because the defendant here was acquitted of a conspiracy but convicted of substantive offenses. But that's exactly the circumstances that were presented in Powell. In Powell, the defendant also was acquitted of a conspiracy that charged several overt acts that implicated the substantive counts of conviction. And yet, the Supreme Court said that it would not carve out an exception to the Dunn rule, the well-established Dunn rule, that counts of conviction have to be treated independently for sufficiency of the evidence purposes and that inconsistent verdicts are irrelevant. And the Court's language in resolving that question was broad and definitive. It said that even if the jury's verdict could not rationally be reconciled, it was irrelevant that the defendant was acquitted of certain counts because each count has to be determined on its own when we're looking at the sufficiency of the evidence supporting a particular count of conviction. So the inconsistent verdict here is simply irrelevant for purposes of looking at the actual sufficiency of the evidence supporting the substantive counts. And to go to the evidence supporting those substantive counts here, again, we're here not only on a Rule 29 posture but on a plain air Rule 29 posture. And so Mr. Copeland's burden is very high. He cannot meet that burden. The evidence was sufficient under any standard to support his convictions. There was direct evidence from multiple witnesses establishing that Copeland knew that his sales representatives were bribing doctors and nurses to induce prescription orders and referrals. Documentary evidence confirmed that Copeland approved reimbursements to his sales team for the expenses they incurred in bribing doctors and falsified expense reports to conceal the bribes. And Copeland's false and misleading statements to investigators only further confirmed his consciousness of guilt. Mr. Copeland's contrary arguments today about the credibility of certain witnesses are arguments for the jury that the jury obviously rejected as to the substantive counts of conviction. So we would ask this court to affirm those convictions. Copeland's sentencing claims are likewise meritless. I have a question about the convictions. One issue that I have with these prosecutions in general is the drawing the line between sort of normal business conduct, right? So, I mean, the fact, for example, that these salespeople are paid by commission, the fact that they're spending some money taking, you know, doctors out on, I think one of them was taking them to like a, you know, duck hunting and stuff like that. Like these are sort of innocuous in and of themselves. And how do we draw a line between just kind of innocuous conduct and kickbacks? I think the key points for purposes of this case are that the evidence showed that doctors prescribed to FPS because of the unlawful inducements that they received. We saw that, for example, in the evidence of some of the doctors prescribing practices before and after they received certain unlawful inducements. And in the testimony and documentary evidence that showed the doctors who received these inducements prescribed to FPS much more than doctors who did not. But there's also, and critically, the key element for distinguishing. And so, just to press on that a little bit, I mean, what's the difference between a successful sales strategy, the doctors you're trying to get, you know, you're trying to get them to prescribe versus a quid pro quo, I'm giving you a trip, duck hunting, and you're going to prescribe? Well, and I think the critical distinction in all of these cases comes down to the defendant's mens rea and his knowledge that these unlawful inducements and the prescribing are linked in an unlawful way. The defendant has to act knowingly and willfully in violation of the anti-kickback statute. And there was plenty of evidence of that here. I think we can also look here to the broader evidence of what FPS was doing. And there was evidence that, for example, by the end of the time frame here, that's at issue by the time these payments were made, that dozens of patients were calling in complaining about the fact that they'd been prescribed these medications that they didn't want or need and didn't understand why they were receiving them. You had the evidence about these blanket letters of authorization that gave FPS the authority to swap in and out ingredients in prescriptions, including active ingredients. And so I think the jury was entitled to consider why a doctor who has signed one of those blanket letters authorizing FPS to change the entire nature of a product that he or she is prescribing would sign those prescriptions. And the evidence showed it was because of the unlawful inducements that they were receiving. Additionally, I would just note that any argument along these lines is waived for purposes of this case, not only because it's not raised in Mr. Copeland's brief, although that would be enough, but also on page 18 of his brief, he acknowledges that Moss and Gordon's conduct satisfied all the elements of accepting and paying kickbacks. And so the only argument that he's raising here is as to his mens rea. And the evidence at trial was more than sufficient for the jury to find that he acted knowingly and willfully. To briefly touch on the sentencing claims, which are likewise meritless, Copeland has never seriously contested that he managed or supervised at least one other participant in the commission of the offense. And Copeland's criminal activity both involved five or more participants and was otherwise extensive. The district court did not clearly err in applying that sentencing enhancement. And Copeland also is not entitled to acceptance of responsibility credit without ever accepting responsibility. On the supervision, is it necessary that the government prove that those who were supervised also had the mens rea to commit the offense? Government has to, so there are two, there are two separate, there are a few separate determinations here. First of all, there's the question of whether Copeland knowingly, whether Copeland supervised at least one other person who's criminally responsible for the offense. He's never seriously contested that he supervised Eddie Jackson or that Eddie Jackson could be considered to have the mens rea to have committed the offense. There's a separate question then once he's knowingly supervised at least one other person of whether his criminal activity involved five or more participants. Doesn't have to be five or more people that he oversaw, but the criminal activity overall has to involve at least five participants or if it was otherwise extensive. Now, if we're looking at the five or more participants prong of that analysis, they have to be criminally responsible, meaning that they must have knowingly participated in some of the acts that involve the same course of conduct. If we're looking to the otherwise extensive prong, then we don't necessarily have that requirement. I think the court's comments at sentencing could be read as indicating that the otherwise extensive prong was met. The court mentioned the actual loss amount of $2.6 million and the fact that there were 12 sales representatives working under Mr. Copeland. If you look at Sosa and the other cases that we've cited, this court regularly has found the criminal activity was otherwise extensive when there was a loss amount over a million dollars. So I think the court in indicating that $2.6 million loss amount was suggesting that the activity was otherwise extensive. It also, of course, went on for several years and involved the 12 people under Mr. Copeland as sales representatives, as the court noted. But we also think it's relatively easy here to count to five with criminally culpable participants. So on either basis, the court's sentencing enhancement would be justified and certainly not clearly erroneous. Unless there are no further questions, we ask the court to affirm. Okay. Very well. Thank you so much. Mr. Little, you've got three minutes of rebuttal time remaining. Judge Brasher, you brought up an interesting point and this has always been the contention as well as when does a commission become a kickback? And I think that goes directly to the mens rea issue of what does the individual know when they receive payments or they make those payments? Notably in this case, the government did not call a single doctor to testify that they acted in a certain way or did a certain thing as a result of Mr. Copeland's actions or the anybody, including that, even if we want to include Eddie Jackson, including Eddie Jackson, any actions those individuals did that made the doctors act in a certain way. That evidence was notably absent at trial, which was an interesting fact when we proceeded to trial and no doctors were ever called. Certainly we conceded that Moss and Gordon- Evidence though that Mr. Copeland misled investigators with regard to types of so-called kickbacks and denied other than a minimal, I can't remember what the gift was, but something minimal, or anything else. Isn't that evidence of mens rea guilt? It can certainly be considered as consciousness of guilt. He did make misrepresentations as to, I believe it was some of the invoices, what the mischaracterizations of what some of the costs were. I believe one of the big ones was through Eddie Jackson regarding a trip, and I think that was classified as an educational trip rather than a hunting or something of that nature. So he did make misrepresentations to authorities, which could be considered as consciousness of guilt. We certainly conceded that Moss and Gordon have satisfied all elements of the crimes. I don't think that's in dispute. They both pled to it. They both cooperated on behalf of the government. However, we certainly think there's a distinction as to what their involvement was, what they knew, and what the evidence as to Mr. Copeland's knowledge was. So with that, we would just ask again that the court consider this, set aside the verdicts as to counts 2, 3, 4, 5, and 6, or in the alternative remand the case back to the district court for resentencing. Okay. Very well. Thank you both. That case is submitted. We'll move to the second case, which is United States v. Gibbs.